673 A.2d 324

In re Nomination Petition of Kathleen J. PRENDERGAST for the position of Representative in the General Assembly, 196th Legislative District—Democrat

PETITION OF Francis X. McKEE, Democratic Elector, 196th Legislative District

Kathleen J. Prendergast, Appellant.

Supreme Court of Pennsylvania.

Submitted March 19, 1996.

Decided April 2, 1996.

500

Amy L. Putnam, for Kathleen Prendergast.

Francis X. McKee, pro se.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

This is a direct appeal from an order of the Commonwealth Court, which granted a petition to set aside the nomination petition of Appellant, Kathleen J. Prendergast, Democratic candidate for the position of Representative in the Pennsylvania General Assembly, 196th Legislative District. We find that because Appellant does not meet the qualifications for Representative as set forth in Article 2, Section 5, of the Pennsylvania Constitution, the affidavit accompanying her nomination petition is false and incapable of being amended to cure the defect. Accordingly, we affirm.

██ We possess jurisdiction over this case pursuant to Pa.R.A.P. 1101 and 42 Pa.C.S. § 723(a) as this matter was originally commenced in the Commonwealth Court. Although not raised by the parties, we find it necessary to note that the plurality decision in *In re Nomination Petition of Roxanne Jones,* 505 Pa. 50, 476 A.2d 1287 (1984), does not preclude us from reviewing this matter. In *Jones,* it was stated that a court may not make an *a priori* determination of whether a candidate meets the constitutional requirements for the office he or she seeks to obtain and on the basis of that judgment deny the candidate the right to put his or her name before the public for their consideration. The plurality opinion wrote that neither Article II, Section 5, nor any statute conferred jurisdiction upon the courts to inquire into the qualifications of one seeking to run for office. *Id.* at 62, 472 A.2d at 1293. Furthermore, the objectors in *Jones* did not demonstrate a specific defect in the nomination petition under Section 977 of the Election Code.

The Commonwealth Court in *In re Nomination Petition of T. Milton Street*, 102 Pa.Commw. 155, 516 A.2d 791 (1986), distinguished the circumstances in *Jones* from cases involving a challenge to a nomination petition. *Street* involved a petition to set aside a nomination petition on the grounds that the candidate's affidavit accompanying his petition contained a false statement—that he was an inhabitant of the electoral district one year next before the election. The Commonwealth Court concluded that it had jurisdiction.

The court found that subsequent to the decision in *Jones*, the legislature addressed the deficiency of the courts' jurisdiction in this regard by amending Sections 910 and 977 of the Election Code. Section 910, 25 P.S. § 2870, was amended to require that in cases of petitions for nomination to the General Assembly, the candidate's affidavit shall state that he/she satisfies the requirements contained in Sections 5 and 7 of Article II. Section 3 of the Act of April 18, 1985, P.L. 5, No. 4 (Act 4 of 1985).

Section 977 of the Election Code, 25 P.S. § 2937, was also amended to provide that if the court

"finds [that] any accompanying or appended affidavit [to a nomination petition] contains a material defect or error, it shall be set aside. For purposes of this section, a nomination petition or paper shall include all affidavits required to be filed with such nomination petition or paper under this Act."

Section 4 of Act 4 of 1985.

We approve the reasoning in *Street* and conclude that the challenge to the nomination petition in the instant case is therefore justiciable.

The record establishes that Appellant was born in Pennsylvania on January 4, 1963, and resided here until August of 1990, when she moved to Arlington, Virginia to attend George Mason University School of Law. While in Virginia, Appellant obtained a Virginia driver's license and registered her automobile there. During the second and third years of law school, Appellant paid tuition at a lower rate for Virginia citizens,

George Mason University being a state institution of higher learning. She also registered to vote in the Commonwealth of Virginia and voted in several elections.

After graduating from law school, Appellant took only the Pennsylvania bar examination. Upon receiving her successful results, she returned to Pennsylvania in January of 1994. On May 27, 1994, Appellant registered to vote in Pennsylvania.

On February 13, 1996, Appellant filed her nomination petition and the required candidate's affidavit for the office of Representative in the Pennsylvania General Assembly. Included in her candidate's affidavit was a signed affirmation that Appellant satisfies the requirements of Article II, Section 5, of the Pennsylvania Constitution. That section provides as follows:

> Senators shall be at least 25 years of age and Representatives 21 years of age. They shall have been citizens and inhabitants of the State four years, and inhabitants of their respective districts one year next before their election (unless absent on the public business of the United States or of this State), and shall reside in their respective districts during their terms of service.

On February 20, 1996, Appellee, Francis X. McKee, filed a petition with the Commonwealth Court pursuant to Section 977 of the Pennsylvania Election Code, 25 P.S. § 2937. Therein, he requested that the court declare Appellant ineligible for office under Article II, Section 5, declare her affidavit false and, therefore, void, and strike her name from the ballot for the April 23, 1996 primary election. Appellee argued that Appellant had not been a citizen of Pennsylvania for four years prior to the election due to the fact that she had been a citizen of Virginia during that period. Appellant asserted that Article II, Section 5, merely requires that a candidate be a citizen and inhabitant of Pennsylvania for four years, not necessarily immediately prior to the election. Alternatively, she contended that she satisfied the four year requirement, regardless of the interpretation of Article II, Section 5, since she never abandoned her domicile in Pennsylvania.

Following a hearing, the Commonwealth Court granted Appellee's petition, concluding that "a candidate for office must be an inhabitant for the required term *immediately preceding* the general election for that office." Maj. op. at 326 (emphasis supplied). It further concluded that Appellant was not an inhabitant citizen of Pennsylvania for four years prior to the general election of November 5, 1996.

■ We must first decide whether Article II, Section 5 requires that a candidate be an inhabitant and citizen of Pennsylvania for four years immediately preceding the election. As noted, the disputed language provides that candidates "... shall have been citizens and inhabitants of the State four years, and inhabitants of their respective districts one year next before their election...." Appellant contends that the Commonwealth Court committed an error of law in determining that the words "next before their election" modify both the four-year state residency requirement and the one-year district residency requirement. Appellant argues that the comma in this provision separates that portion of the paragraph that requires legislators to have been "citizens and inhabitants of the State four years," from that portion which mandates that they be "citizens of their respective districts one year next before their election."

Appellee submits that the provision has consistently been interpreted as mandating a four year period of state residency immediately prior to the election. Although this issue has never been squarely presented, we conclude that a consecutive four year state residency requirement immediately preceding the election is consistent with case law interpreting the provision in its entirety.

In *Fry's Election Case,* 71 Pa. 301 (1872), the issue was whether certain students living in Allentown while attending Muhlenberg College were legal voters pursuant to Article III, Section 1 of the Constitution of 1838. That provision stated:

"In elections by the citizens, every white freeman of the age of twenty-one years, having resided in this state one year, and in the election district where he offers to vote ten days

immediately preceding such election ... shall enjoy the rights of an elector."

Although the phrase "immediately preceding such election" appears only in the clause stating a ten day residency requirement, Justice Agnew writing for the Court found it obvious that "the state residence and the district residence are of the same nature, and whatever is necessary to constitute the one, is essential to define the other; the only difference being in their time of duration." *Id.* at 306. In discerning the meaning of the term "resided," Justice Agnew also made reference to Article II, Section 5:

"[t]he Constitution provides that senators and representatives shall be inhabitants of the state, the latter three and the former four years; *and the last year,* inhabitants of the districts from which they are chosen."

71 Pa. at 307 (original emphasis deleted; emphasis supplied).

Although the length of the residency requirement for Representatives has since changed, the use of the phrase "the last year" indicates that the state residency requirement was understood as overlapping the district residency requirement. Thus, the state residency requirement must be satisfied immediately prior to the election. This construction of Article II, Section 5, was restated in *In re Lesker,* 377 Pa. 411, 415, 105 A.2d 376, 378–379 (1954), where we interpreted the term "inhabitant" in the context of the qualifications for the office of assemblyman for the 9th Legislative District in Allegheny County.

The same interpretation of Article II, Section 5, was espoused in *In re Nomination Petition of Vidmer,* 65 Pa. Commw. 562, 442 A.2d 1203, *aff'd,* 497 Pa. 642, 444 A.2d 100 (1982). In *Vidmer,* a Pennsylvania General Assembly candidate had relocated to Michigan to attend the University of Michigan in 1963. In 1968, to obtain a lower tuition fee, Vidmer dropped out of school, took up residence in Michigan and worked for the required period of time to qualify as a permanent resident of that state. Vidmer voted as a Michigan resident in the 1976 and 1978 elections. He subsequently

accepted a position as an administrative assistant to a congressman and became a resident of Virginia. Vidmer returned to Pennsylvania in July of 1981, and in 1982, he sought the nomination for the House Seat from the 26th Legislative District.

In addressing the provisions of Article II, Section 5, the Commonwealth Court, in a single judge opinion by Judge MacPhail, stated that Section 5 provides that "members of the House of Representatives shall have been 'citizens and inhabitants' of the State four years next before their election." *Id.* at 566, 442 A.2d at 1205. The court concluded that Vidmer failed to satisfy such requirement and therefore set aside his nomination petition.

Although the courts in the aforementioned cases were not faced with the precise issue of the application of the phrase "next before their election," the construction given to the language of Article II, Section 5 is sound. We agree with the Commonwealth Court that interpreting Article II, Section 5 as requiring a four year state residency immediately preceding the election is consistent with the clear intent of the Constitutional provision: to ensure that candidates for the Pennsylvania General Assembly have some minimum attachment to, and understanding about, the Commonwealth and the district which they wish to represent. If Appellant's interpretation were adopted, an individual who resided in the Commonwealth for four years during any period of his life could return to Pennsylvania and qualify for office in only one year. We do not believe that this is what the framers of the Constitution intended by this provision.

Having determined that the state residency requirement must be satisfied in the four years immediately preceding the election, we must now decide whether Appellant has been a citizen and inhabitant of Pennsylvania since November 5, 1992, four years prior to the general election.

We have held that the term "inhabitant" or "resident" as stated in Article II, Section 5, "cannot mean one sojourning temporarily, or for some special purpose, but refers to one

who has a permanent abode; the domicil of the senator, representative, governor or judge...." *In re Lesker*, 377 Pa. at 414, 105 A.2d at 376, quoting, *Fry's Election Case*, 71 Pa. at 307.

A domicile is the place at which an individual has fixed his family home and principal establishment for an indefinite period of time. *Dorrance's Estate*, 309 Pa. 151, 163 A. 303 (1932). A domicile once acquired is presumed to continue until it is shown to have been changed and where a change is alleged, the burden of proving it rests upon whoever makes the allegation. *Id.* A new domicile can be acquired only by physical presence at a new residence plus intent to make that new residence the principal home. *Id.* Intent is the actual state of facts, not what one declares them to be. An established domicile, however, can be retained without physical presence or residence until it be proven that a new domicile has been acquired.

Applying the established law to the instant case, we find that Appellee met his burden of demonstrating that Appellant established a new domicile in Virginia. Appellant registered her vehicle in that state, she registered to vote there, and, most importantly, she voted as a Virginia citizen in several elections. As noted by the Commonwealth Court, Section 704(h) of the Pennsylvania Election Code, Act of June 3, 1937, *as amended*, 25 P.S. § 2814(h), provides that, "[i]f a person goes into another state and while there exercises that right of a citizen by voting, he shall be considered to have lost his residence in this State." Moreover, like the candidate in *Vidmer*, Appellant qualified for the reduced tuition granted only to citizens of Virginia.[1]

Since Appellant was a citizen of Virginia during part of the four year period preceding the November 5, 1996 election, she could not have been a citizen of Pennsylvania. As such, her

1. We are fully cognizant of the fact that Appellant was a citizen of Pennsylvania for the majority of her lifetime, that she sat only for the Pennsylvania bar exam, and that she intended to someday return to Pennsylvania. We find, however, that these factors are outweighed by those establishing a domicile in Virginia.

candidate's affidavit which accompanied her nomination petition was false. Pursuant to Section 977 of the Election Code, 25 P.S. § 2937, a nomination petition shall be set aside if it contains a material defect.

Accordingly, we affirm the order of the Commonwealth Court granting the petition to set aside Appellant's nomination petition.

CASTILLE, J., concurs in the result.